IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
EASTERN DIVISION

RICKY LEE STEWART, III,

     Petitioner,

v.

                                   No. 1:20-cv-01234-JDB-jay
                                   Re: 1:10-cr-10029-1

UNITED STATES OF AMERICA,

     Respondent.

ORDER DISMISSING § 2255 PETITION,
DENYING CERTIFICATE OF APPEALABILITY,
AND
DENYING LEAVE TO APPEAL IN FORMA PAUPERIS

Petitioner, Ricky Lee Stewart, III,[1] has filed, with permission from the Sixth Circuit, a

second or successive motion to vacate, set aside, or correct his sentence (the "Petition").  (Docket

Entry ("D.E.") 2.)[2]   For the following reasons, the Petition is DISMISSED.

BACKGROUND

I.     Criminal Case

In December 2009, Stewart attempted to rob a Save-A-Lot grocery store in Henderson,

Tennessee.  (*United States v. Stewart*, No. 1:10-cr-10029-JDB-1 (W.D. Tenn.) ("No. 1:10-cr-

10029-JDB-1"), Presentence Report at 5-8.)   During the course of that event, he shot and killed

Captain Dennis Cagle of the Henderson Police Department.  In March 2010, he was charged by a

_____

[1]The docket in the present case and in Petitioner's criminal case record his last name as "Stewart," but the inmate lists his name as "Steward" on the Petition.  The Court will refer to Petitioner as "Stewart."

[2]Unless otherwise noted, record citations are to documents filed in the present matter.

grand jury sitting in the Western District of Tennessee with attempted Hobbs Act robbery in violation of 18 U.S.C. § 1951 (Count 1), discharging a firearm during and in relation to a crime of violence—i.e., attempted Hobbs Act robbery—in contravention of 18 U.S.C. § 924(c)(1) (Count 2), using a firearm to commit first-degree murder in the course of a crime of violence—i.e., attempted Hobbs Act robbery—in violation of 18 U.S.C. § 924(j)(1) (Count 3), and being a felon in possession of a firearm in contravention of 18 U.S.C. § 922(g) (Count 4).  (*Id.*, D.E. 2.)

In October 2011, Stewart entered into a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  (*Id.*, D.E. 127.)  By that document, he represented that he would plead guilty to all four counts of the indictment in exchange for the Government's agreement to a life sentence in lieu of the death penalty.[3]  In Paragraph 6 of the plea agreement, he waived his right to appeal or collaterally attack his sentence, except in limited circumstances:

> Ricky Stewart will not appeal his guilty plea or the sentence.  Ricky Stewart understands that, pursuant to 18 U.S.C. § 3742(a), he has the right to appeal the sentence imposed.  Ricky Stewart recognizes that his right to appeal the sentence imposed herein will be limited by 18 U.S.C. § 3742(c) because this is a plea agreement reached pursuant to Fed.R.Crim.P. 11(c)(1)(C).  However, acknowledging this limited statutory right, *Ricky Stewart knowingly and voluntarily waives his right to contest or appeal, pursuant to 18 U.S.C. § 3742 or 28 U.S.C. § 2255, the sentence imposed by the Court pursuant to this Rule 11(c)(1)(C) agreement.*  This waiver is made in exchange for the concessions made by the prosecuting authorities in this plea agreement.  The parties jointly request that the Court find that this waiver provision is knowingly and voluntarily agreed upon prior

---

[3]The plea agreement also bears the signature of the Tennessee District Attorney General for the Twenty-Sixth Judicial District. (D.E. 127 at PageID 262.)  Respondent explains that "[t]he sole reason that [a] murder charge was not pursued by the State of Tennessee was because it was agreed that the federal government would prosecute Stewart."  (D.E. 18 at PageID 72.)  Petitioner has not disputed that representation.

to accepting Ricky Stewart's guilty plea. *The waiver in this paragraph does not apply to claims of prosecutorial misconduct or the ineffective assistance of counsel.*

(*Id.*, D.E. 127 at PageID 260-61 (emphasis added).)

A change-of-plea hearing was held on October 4, 2011. (*Id.*, D.E. 126.) The undersigned conducted the required colloquy under Fed. R. Crim. P. 11.[4] Satisfied that Stewart understood the rights he was relinquishing, the undersigned accepted the plea upon a finding that it was entered knowingly and voluntarily.

On October 4, 2012, Stewart was sentenced to life imprisonment on Count 3, twenty years on Count 1 to run concurrent with Counts 3 and 4, ten years on Count 4 to run concurrent with Counts 1 and 3, and ten years on Count 2 to run consecutive to Counts 1, 3, and 4. A five-year term of supervised release was also imposed. (*Id.*, D.E. 182.) Petitioner did not take a direct appeal.

II.      First § 2255 Petition

On October 21, 2013, Stewart moved to vacate, set aside, or correct his sentence pursuant to § 2255. (*Steward v. United States*, No. 1:13-cv-01287-JDB-egb (W.D. Tenn.) ("No. 1:13-cv-01287-JDB-egb"), D.E. 1.) He asserted violations of his right to receive a fair trial under the Sixth and Fourteenth Amendments based on ineffective assistance of counsel and contended that his

---

[4]"[A] court "must inform the defendant of, and determine that the defendant understands, . . . the terms of any plea agreement waiving the right to appeal or to collaterally attack the sentence[.]" Fed. R. Crim. P. 11(b)(1)(N).

guilty plea was involuntarily.  In a memorandum opinion and order entered on July 22, 2016, the

Court denied the claims.  (*Id.*, D.E. 13.)  The Court held therein that the guilty-plea claim was

procedurally defaulted and the ineffective assistance claims were without merit.  The Sixth Circuit

denied a certificate of appealability.  (*Id.*, D.E. 17.)

III.     Second or Successive § 2255 Petition

On June 16, 2020, Petitioner filed in the Sixth Circuit a pro se motion for authorization to

proceed on a second or successive § 2255 petition pursuant to 28 U.S.C. § 2244(b).[5]  (*In re Ricky

Stewart*, *III*, No. 20-5628, D.E. 1 (6th Cir. ).)  The appellate court liberally construed the motion

as arguing that Petitioner's conviction for attempted Hobbs Act Robbery no longer qualifies as a

crime of violence for purposes of his §§ 924(c) and 924(j) offenses after the United States Supreme

Court's decision in *United States v. Davis*, 139 S. Ct. 2319 (2019).  (*Id.*, D.E. 1.)  The Sixth Circuit

granted Stewart's motion.  (D.E. 1.)  It noted, however, that the Government was free to raise

Petitioner's collateral-rights waiver as an affirmative defense in the district court.  The Clerk

docketed the motion as the Petition in the present matter and counsel was appointed.  (D.E. 2, 14.)

On January 4, 2021, Stewart, through counsel, filed a brief in support of the Petition.  (D.E.

17.)  He urged this Court to adopt the reasoning of the minority of circuits holding that attempted

Hobbs Act robbery is a not a crime of violence.

The Government filed its brief in opposition to the Petition on February 1, 2021.  (D.E.

18.)  Respondent maintained that the collateral-rights waiver that was part of Stewart's plea

---

[5]"Before a second or successive application . . . is filed in the district court, the applicant
shall move in the appropriate court of appeals for an order authorizing the district court to consider
the application."  28 U.S.C. § 2244(b)(3)(A).

agreement bars his claim, that the claim is procedurally defaulted,[6] and that the claim is, in any event, without merit.

Petitioner replied, positing that his collateral-rights waiver was not knowing and voluntary because he was unaware at the time that he could be giving up his right to challenge his sentence after a change in law.  Stewart also maintained that the waiver does not bar his claim because, "if [he] is correct on his substantive argument that attempted Hobbs Act robbery is not a crime of violence," then his life sentence "exceed[ed] the statutory maximum" and thus would be subject to collateral challenge notwithstanding the waiver.  (D.E. 19 at PageID 91.)  Regarding the procedural default, the inmate conceded that he defaulted the claim.  He insisted, however, that he can overcome the procedural-default bar because an argument on direct appeal that attempted Hobbs Act robbery was not a crime of violence would have been sufficiently novel to establish cause to excuse the default.

Several months after briefing in the present matter was completed, the United States Supreme Court granted certiorari on the question of whether attempted Hobbs Act robbery is a § 924(c) predicate crime of violence.  *See United States v. Taylor*, 141 S. Ct. 2882 (2021).  This Court stayed proceedings herein pending a decision in *Taylor*.  (D.E. 20.)

The Supreme Court issued its ruling on June 21, 2022, holding that attempted Hobbs Act robbery is not a crime of violence for purposes of § 924(c).  *See United States v. Taylor*, 142 S.

---

[6]Proceedings under § 2255 are not a substitute for direct appeal.  *Massaro v. United States*, 538 U.S. 500, 504 (2003).  Therefore, "the general rule [is] that claims not raised on direct appeal may not be raised on collateral review unless the petitioner shows cause and prejudice'' to excuse the procedural default.  *Id.*  A petitioner may also seek to overcome the default on the ground "that he is 'actually innocent'" of the crime of conviction.  *Bousley v. United States*, 523 U.S. 614, 622 (1998) (quoting *Murray v. Carrier*, 477 U.S. 478, 496 (1986)).

Ct. 2015, 2020 (2022).  By order dated July 15, 2022, this Court lifted the stay in the present matter.  (D.E. 22.)  In the same order, the Court noted that several weeks prior to the decision in *Taylor* the Sixth Circuit addressed in a published opinion the enforceability of collateral-rights waivers after changes in law.  *See Portis v. United States*, 33 F.4th 331 (6th Cir. 2022).  While acknowledging that the parties had briefed the issue of whether Stewart's collateral-rights waiver bars his § 2255 claim, the Court noted that they did so prior to *Portis*.  The parties were therefore ordered to file supplemental briefs concerning the applicability of *Portis* to Petitioner's circumstances.  The Government's supplemental brief was filed on July 22, 2022, (D.E. 23) and the Petitioner's five days later (D.E. 24).

## DISCUSSION

The Government does not dispute that Petitioner's conviction for attempted Hobbs Act robbery is no longer a valid predicate for his §§ 924(c) and 924(j) convictions after *Taylor*. Nevertheless, as previously observed, Respondent has asserted a procedural-default defense and a waiver defense, either of which, if valid, would bar Stewart from pursuing his claim in this § 2255 proceeding.  Because the Court determines that the inmate's collateral-rights waiver bars his claim, it declines to address the procedural-default defense.

I.      § 2255 Legal Standards

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either:  (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (internal quotation marks omitted).  "In reviewing a § 2255 motion in which a factual dispute arises, the habeas court must hold an evidentiary hearing to

determine the truth of the petitioner's claims." *Valentine v. United States*, 488 F.3d 325, 333 (6th

Cir. 2007) (internal quotation marks omitted).   "[N]o hearing is required," however, "if the

petitioner's allegations cannot be accepted as true because they are contradicted by the record,

inherently incredible, or conclusions rather than statements of fact."   *Id.*   A petitioner has the

burden of proving that he is entitled to relief by a preponderance of the evidence.  *Pough v. United

States*, 442 F.3d 959, 964 (6th Cir. 2006).[7]

II.      *Davis* and *Taylor*

Eighteen U.S.C. § 924(c) provides in pertinent part that, "*any person who, during and in

relation to any crime of violence . . .*, uses or carries a firearm, or who, in furtherance of any such

crime, possesses a firearm, shall, in addition to the punishment provided for such crime of violence

. . . if the firearm is discharged, be sentenced to a term of imprisonment of not less than 10 years."

18 U.S.C. § 924(c)(1)(A)(iii) (emphasis added).  Section 924(j) specifies that "[a] person who, *in

the course of a violation of subsection (c),* causes the death of a person through the use of a firearm,

shall . . . if the killing is a murder . . . be punished by death or by imprisonment for any term of

years or for life[.]"  18 U.S.C. § 924(j)(1) (emphasis added).

Section 924(c)(3) sets forth a "two-part definition" of crime of violence, "only one part of

which need apply."  *United States v. Robinson*, 708 F. App'x 272, 273 (6th Cir. 2017).  "First, a

crime of violence is a felony that 'has as an element the use, attempted use, or threatened use of

physical force against the person or property of another.'"  *Id.* (quoting 18 U.S.C. § 924(c)(3)(A)).

This is known as the "use-of-force" clause.  *United States v. Camp*, 903 F.3d 594, 597 (6th Cir.

---

[7]No hearing is needed in the present matter because the record in Petitioner's criminal case
and the applicable law establish that Stewart is not entitled to relief.

2018), *cert. denied*, 139 S. Ct. 845 (2019). "Second, a crime of violence is a felony 'that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense.'" *Robinson*, 708 F. App'x at 273 (quoting 18 U.S.C. § 924(c)(3)(B)). This language is referred to as the statute's "residual clause." *See Camp*, 903 F.3d at 597 n.2.

In 2019, the Supreme Court in *Davis* held that § 924(c)(3)'s residual clause "is unconstitutionally vague." *Davis*, 139 S. Ct. at 2336. It found that "the imposition of criminal punishment" under the clause impermissibly "depend[ed] on a judge's estimation of the degree of risk posed by a crime's imagined 'ordinary case.'" *Id.* at 2326. Accordingly, "[a]fter *Davis*, a predicate offense qualifies as a crime of violence only if use of force is an element of the offense[.]" *United States v. Woods*, 14 F.4th 544, 552 (6th Cir. 2021), *cert. denied*, 142 S. Ct. 910 (2022). Two years after issuing *Davis*, the Supreme Court determined that attempted Hobbs Act robbery does not meet the definition of a crime of violence under the statute's use-of-force clause. *See Taylor*, 142 S. Ct at 2020-21. The Court examined the elements of the crime and determined that a prosecution for attempted Hobbs Act robbery "does not require the government to prove that the defendant used, attempted to use, or even threatened to use force against another person or his property." *Id.* at 2020.

III.   Collateral-Rights Waiver

"It is well-settled that a knowing and voluntary waiver of a collateral attack is enforceable." *Slusser v. United States*, 895 F.3d 437, 439 (6th Cir. 2018) (citing *Watson v. United States*, 165 F.3d 486, 489 (6th Cir. 1999)), *cert. denied*, 139 S. Ct. 1291 (2019). That is so because "[a] defendant may waive any right, even a constitutional one, in a plea agreement, if he relinquishes

that right knowingly and voluntarily." *Portis*, 33 F.4th at 334-35 (citing *Brady v. United States*, 397 U.S. 742, 748 (1970)). Nevertheless, "[s]uch waivers are not without limit." *Id.* at 335. Specifically, courts "will not enforce them if counsel provided constitutionally ineffective assistance[,] if the government breached the agreement[, or if the] waivers [are] infected by race discrimination." *Id.* (citing *United States v. Ferguson*, 669 F.3d 756, 764, 767 (6th Cir. 2012) and *United States v. Swanberg*, 370 F.3d 622, 627-28 (6th Cir. 2004)). "The process leading to the waiver also must be fair and comply with Rule 11 of the Federal Rules of Criminal Procedure." *Id.*

In *Portis*, the petitioners pleaded guilty in their underlying criminal cases to one count of conspiring to commit Hobbs Act robbery and one count of using a firearm during a crime of violence in violation of § 924(c). *Id.* at 333. "Under virtually identical written plea agreements," they waived their rights to appeal or collaterally attack their sentences under § 2255. *Id.* at 334. Their waivers, however, provided exceptions for "sentences that exceeded 'the statutory maximum' or the Sentencing Guidelines range" and "claims of ineffective assistance of counsel or prosecutorial misconduct." *Id.* Several years following their convictions, the petitioners brought claims under § 2255 based on *Davis* and on the Sixth Circuit's ruling in *United States v. Ledbetter*, 929 F.3d 338 (6th Cir.), *cert. denied*, 140 S. Ct. 509 (2019), that conspiracy to commit Hobbs Act robbery is not a predicate crime of violence under the statute's use-of-force clause. *Id.* (citing *Ledbetter*, 929 F.3d at 361). The district court denied the claims on the merits. *Id.*

On appeal, the Sixth Circuit considered whether the petitioner's collateral-rights waivers barred their *Davis/Ledbetter* claims. *Id.* Petitioners did not "deny that they knowingly and voluntarily entered the plea agreement in return for the government's decision to drop several

9

counts against them," and they did "not claim that counsel provided constitutionally ineffective assistance or that the waiver was premised on race discrimination." *Id.* at 335. Instead, they posited a twofold argument that their waivers were unenforceable. *Id.* They maintained that the waivers did "not apply if later changes in the law might benefit them" and that "the limitation in the agreement to sentences below 'the statutory maximum' permit[ted] them to seek relief[.]" *Id.*

The appellate court addressed the first argument in light of "mainstream" rules relating to the enforceability of collateral-rights waivers and found it unavailing. *Id.* The court reaffirmed that parties to a plea agreement are free to "allocate risk . . . as they see fit." *Id.* (quoting *United States v. Bradley*, 400 F.3d 459, 464 (6th Cir. 2005)). One of those risks, which is "well understood" by the parties at the plea stage, is that "judicial interpretations of the Constitution and laws could change[.]" *Id.* at 338. Therefore, "[s]ubsequent 'developments in the law' that would make a right to bring a postconviction challenge more valuable do not 'suddenly make the plea involuntary or unknowing or otherwise undo its binding nature.'" *Id.* at 335 (quoting *Bradley*, 400 F.3d at 463). Were it otherwise, "the parties' ability to ascertain their legal rights when they sit down at the bargaining table" would be "threaten[ed]." *Id.* (quoting *Bradley*, 400 F.3d at 464). On the record before it, the court found that the waivers were knowing and voluntary and thus enforceable against claims based on later changes in law. *Id.* at 336. Specifically, "[t]he written plea agreement made clear that it waived the right to bring a '§ 2255' petition," and "[d]uring their plea hearings, both men confirmed that they understood that they were waiving their rights to bring postconviction challenges." *Id.* The petitioners' first argument was therefore rejected.

Turning to the petitioners' second contention, the court held that the exception in their waivers for sentences exceeding the statutory maximum did not encompass their *Davis*/*Ledbetter*

10

claims.  *Id.* at 336-38.  Applying the contract interpretation rule that a court should, to the extent possible, "give[] independent meaning to all of" a contract's language, the court found that "[t]he only fair reading of a 'statutory maximum' carve-out that comes with a collateral-attack waiver is that it applies only to sentences that exceed the statutory maximum at the time of the sentence." *Id.* at 337.  To construe the carve-out more broadly—that is, to say that it "cover[s] all manner of later developments"—would leave "the collateral-attack waiver little, if any, work to do."  *Id.*  The court therefore concluded that the collateral-rights waiver was enforceable against the petitioners' *Davis*/*Ledbetter* claims.  *Id.* at 339.  The appeals were dismissed.  *Id.*

The record in Stewart's criminal case establishes that his collateral-rights waiver was knowing and voluntary.  He signed the plea agreement and affirmed in open court and under oath that he understood the rights he was waiving.  After conducting the required Rule 11 inquiry, the undersigned found that Stewart knowingly and voluntarily entered his guilty plea.

Petitioner nevertheless insists that his waiver was unknowing because he was not informed in the plea agreement or by the Court at the change-of-plea hearing that he would be giving up his right to bring a collateral challenge should a later change in law invalidate one or more of his convictions.  He says the plea agreement should have made this explicit, or the Court should have done so at the change-of-plea hearing, because he "is not a lawyer, not trained in criminal procedure and not aware of the relative prevalence of changes in law."  (D.E. 24 at PageID 202.)  The position is not well-taken for two reasons.

First, Petitioner was represented by counsel at the time he pleaded guilty.  And, as *Portis* makes clear, it was "well understood" then, as it is now, "that judicial interpretations of the Constitution and laws could change, and on that ground alone a collateral attack waiver [is] not . .

11

. unknowing." *Portis*, 33 F.4th at 338; *see also King v. United States*, 41 F.4th 1363, 1369 (11th Cir. 2022) ("Both parties understand that a higher court could later announce a new legal rule relevant to the defendant's conviction or sentence."); *Oliver v. United States*, 951 F.3d 841, 845 (7th Cir. 2020) (an appeal waiver is designed "to account in advance for unpredicted future developments in the law").  Secondly, the inmate has submitted no evidence to support a factual determination that he misunderstood the import of his waiver or that he would have been willing to relinquish the concrete benefits of the plea bargain for the potential benefits of unspecified, unforeseen developments in the law.  Indeed, the gains derived from the plea were substantial, as the "plea deal offered a surety," *King v. Mays*, No. 21-5110, 2022 WL 3135923, at *8 (6th Cir. Apr. 22, 2022), against a sentence of death at both the federal and state levels.[8]  In short, Petitioner has not shown that his collateral-rights waiver was unknowing.

He also argues in his reply brief that his waiver, even if knowing and voluntary, should not bar him from challenging his sentence because the changes in law announced in *Davis* and *Taylor* have rendered his punishment beyond the "statutory maximum."  (D.E. 19 at PageID 91.)  More to the point, he maintains that the sentence he is serving exceeds the statutory maximum allowed for his §§ 924(c) and 924(j) offenses because no period of incarceration can follow from invalid convictions.  In support, he cites to *United States v. Caruthers,* 458 F.3d 459 (6th Cir. 2006), and *United States v. Freeman,* 640 F.3d 180 (6th Cir. 2011), for the proposition that "an appellate

---

[8]As Respondent points out, if Petitioner were to succeed in obtaining relief in the present matter, he would likely face a state charge of first-degree murder.  That is because there is no statute of limitations in Tennessee for first-degree murder, *see* Tenn. Code Ann. § 40-2-101, and there exists substantial evidence to support a prosecution, including eyewitness accounts of the shooting.

12

waiver does not preclude an appeal asserting that the statutory-maximum sentence has been exceeded."[9]  *Caruthers*, 458 F.3d at 472.

Petitioner does not press this contention in his supplemental brief, and thus fails to address how *Portis* might affect his position.  That omission, whether inadvertent or reflecting a reasoned decision to abandon the argument, is not without consequence.  As discussed *supra*, *Portis* found that the carve-out in the petitioners' collateral-rights waivers for a sentence exceeding the statutory maximum "refer[red] to the maximum sentence at the time of sentencing[.]"  *Portis*, 33 F.4th at 339.  Unlike the waiver in *Portis*, Stewart's waiver did not contain an exceeds-statutory-maximum exception, and the argument in his reply relies instead on the judge-made exception to the enforcement of waivers as articulated in *Caruthers* and *Freeman*.[10]  Petitioner has not, however, provided any reason why the principle articulated in *Portis*—i.e., that the maximum sentence is the maximum at the time of sentencing—does not apply here.  In particular, he does not explain

---

[9]The law relating to appellate waivers is generally applicable to collateral-rights waivers. *See Watson*, 165 F.3d at 489 (there is "no principled means of distinguishing" between the two types of waivers).

[10]Because the Court concludes, *infra*, that Petitioner has not adequately briefed his second argument, it is unnecessary to determine whether he is foreclosed from relying on *Caruthers'* statement on the ground that it is mere dicta—a question that has divided panels in this circuit. *Compare Slusser*, 895 F.3d at 440 ("The indication in *Caruthers* that appellate waiver does not preclude a collateral attack on an above-statutory-maximum sentence was dicta, not the holding of the Court.") *to Vowell v. United States*, 938 F.3d 260, 266 (6th Cir. 2019) ("[T]he waiver statement in *Caruthers* was not dicta.") *and Portis*, 33 F.4th at 338-39 (distinguishing *Vowell* and narrowly reading *Caruthers*, but not addressing whether the *Caruthers* rule is dicta); *see also Jimenez v. United States*, Case No. 21-5201, 2022 WL 2610337, at *2 (6th Cir. July 8, 2022) (post-*Portis*, relying on *Vowell* and *Caruthers* for the proposition that courts "will refuse to enforce knowing and voluntary waivers . . . when a district court sentences a criminal defendant above the statutory maximum," citing *Vowell*, 938 F.3d at 271).

13

why a defendant who successfully negotiates a statutory-maximum exception to his waiver would

be held to a more stringent standard as to what constitutes "exceeds statutory maximum" than a

defendant, like himself, whose waiver contains no such exception.[11]   In the absence of briefing

from Petitioner on this issue, the Court declines to find that, after *Portis*, his *Davis*/*Taylor* claim is

a challenge to a statutorily excessive sentence that allows him to escape his waiver pursuant to

*Caruthers*.

For the foregoing reasons, Petitioner's sole claim is DISMISSED as barred by his

collateral-rights waiver.   Judgment shall be entered for Respondent.

APPEAL ISSUES

A § 2255 petitioner may not proceed on appeal unless a district or circuit judge issues a

COA.  28 U.S.C. § 2253(c)(1); Fed. R. App. P. 22(b)(1).  A COA may issue only if the petitioner

has made a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2)-(3).

A substantial showing is made when the petitioner demonstrates that "reasonable jurists could

debate whether (or, for that matter, agree that) the petition should have been resolved in a different

manner or that the issues presented were 'adequate to deserve encouragement to proceed further.'"

*Miller-El v. Cockrell,* 537 U.S. 322, 336 (2003) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484

(2000)).  "If the petition was denied on procedural grounds, the petitioner must show, 'at least, that

jurists of reason would find it debatable whether the petition states a valid claim of the denial of a

---

[11]At least one circuit has applied the same principle announced in *Portis* in a case where the petitioner, who sought to bring a *Davis* claim, relied on a judge-made exceeds-statutory-maximum exception in an attempt to overcome his collateral-rights waiver.  *See King*, 41 F.4th at 1368 ("The 'maximum penalty provided by statute' . . . is not a moving target that changes with new legal developments—it is the maximum statutory penalty in effect at the time of sentencing.").

constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling.'" *Dufresne v. Palmer*, 876 F.3d 248, 252-53 (6th Cir. 2017) (per curiam) (quoting *Slack*, 529 U.S. at 484).

In this case, reasonable jurists would not debate the correctness of the Court's decision to dismiss the Petition. Because any appeal by Petitioner does not deserve attention, the Court DENIES a COA.

Pursuant to Federal Rule of Appellate Procedure 24(a), a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, the prisoner must file his motion to proceed in forma pauperis in the appellate court. *Id.*

In this case, for the same reason it denies a COA, the Court CERTIFIES, pursuant to Rule 24(a), that any appeal in this matter would not be taken in good faith. Leave to appeal in forma pauperis is therefore DENIED.[12]

IT IS SO ORDERED this 10th day of November 2022.

> s/ J. DANIEL BREEN
> UNITED STATES DISTRICT JUDGE

---

[12]If Petitioner files a notice of appeal, he must also pay the full $505.00 appellate filing fee or file a motion to proceed in forma pauperis and supporting affidavit in the Sixth Circuit Court of Appeals within thirty days.